UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MARK A. CHOMOS,

        Plaintiff,               Case No. 2:19-cv-144

v.                                         Honorable Paul L. Maloney

C. BROWN et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants McLean and Unknown Party.

## Discussion

    **I.**     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Montcalm County, Michigan. The

events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Chippewa County, Michigan. Plaintiff sues the following MDOC employees at URF: Assistant Resident Unit Supervisor (ARUS) J. Clark; Corrections Officers C. Brown and Unknown Woodard; Grievance Coordinator M. McLean; and an unnamed chaplain ("Unknown Party").

### A. Defendants Brown, Woodard, and Clark

Plaintiff alleges that Defendants Brown, Woodard, and Clark harassed him on a number of occasions from June 2017 to November 2017. Specifically, in June 2017, Defendants Brown and Woodard repeatedly referred to Plaintiff as a "chomo" in front of other prisoners. Chomo is prison slang for child molester. Plaintiff contends that this label put him at risk of assault from other prisoners. Plaintiff filed grievances about these comments.

On June 28, 2017, Defendant Brown stopped in front of Plaintiff's cell and opened his door. Brown stated that Plaintiff would be "off the yard soon" and told Plaintiff to "[q]uit flapping your gums and do what you're told." (Compl., PageID.8.)

On July 8, Plaintiff asked Defendant Woodard about a scheduled break from his loss-of-privileges sanction. Woodard told Plaintiff, "Chomo, you ain't got nothing coming." (*Id.*, PageID.9.)

On July 9, Defendant Woodard issued a "Notice of Intent to Conduct an Administrative Hearing," alleging that Plaintiff violated his loss-of-privileges sanction by making six telephone calls. (Notice of Intent, ECF No. 1-1, PageID.86.) Defendant Clark conducted a hearing on the notice on July 10, less than 24 hours after Woodard issued it, and revoked Plaintiff's telephone privileges. That same day, Clark interviewed Plaintiff about some grievances Plaintiff had filed. Clark told Plaintiff that he was a "problem" and that "[a]s soon as [Plaintiff] stop[s] splitting hairs, problems will go away." (Compl., PageID.12.)

On July 14, Defendant Brown opened Plaintiff's cell door and stated, "Your bitch ass better not have told on me again today. I hear anything else, I'm gonna fuck your ass up." (*Id.*, PageID.7.)

On July 21, Plaintiff saw Woodard open and read Plaintiff's incoming mail after the mail had already been inspected and screened for contraband. Plaintiff asked Woodard why he did this, and Woodard responded, "Yeah. I read your mail. So what. You gonna cry about that too. Just remember, I got Bonnie's address." (*Id.*, PageID.10.) Plaintiff interpreted this statement as a threat toward his family.

On July 31, Defendant Brown wrote a misconduct report on Plaintiff for interference with the administration of rules. The report alleged that Plaintiff logged onto his J-Pay account when he was not authorized to do so because he was subject to a loss-of-privileges sanction. (Misconduct Report, ECF No. 1-1, PageID.21.)

On August 7, Clark met with Plaintiff to interview him about several grievances that Plaintiff had filed. Clark asked Plaintiff to sign off on the grievances, but Plaintiff refused to do so. Clark then told Plaintiff, "As long as you keep writing these grievances, I'll never send you to Level II. I'll bury your ass back here for the next (8) years until I retire." (Compl., PageID.12.)

On August 24, Woodward conducted a shakedown of Plaintiff's legal property. On August 31, Woodard conducted a pat down search of Plaintiff's body. While doing so, Woodard squeezed each of Plaintiff's testicles.

Finally, Defendant Brown told other prisoners that he would give $50.00 to any prisoner who had Plaintiff "taken off of the yard." (Compl., PageID.7.) A prisoner eventually assaulted Plaintiff in November 2017.

### B. Chaplain Unknown Party

On July 7, 2017, Plaintiff kited Chaplain Unknown Party about having "his religious preferences fixed" because the MDOC has labeled Plaintiff a Protestant, but Plaintiff contends that he is a Mennonite, not a Protestant. (*Id.*, PageID.13.) The chaplain did not respond.

### C. Grievance Coordinator McLean

Defendant McLean placed Plaintiff on modified access to the grievance process on June 19, 2017, which meant that Plaintiff needed permission from McLean to file a grievance. On a number of occasions thereafter, McLean did not respond to Plaintiff's requests for permission to file a grievance.

Plaintiff also kited McClean about the issue regarding his religious affiliation, but McLean did not respond.

As relief for the foregoing, Plaintiff seeks nominal and compensatory damages as well as an injunction requiring Defendants to recognize him as a Mennonite.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Brown, Woodard, Clark

Plaintiff states a claim against Defendants Brown, Woodard, and Clark.  At the very least, Plaintiff states a retaliation claim against Defendants Clark and Brown for their threatening comments in response to Plaintiff's grievances.  In addition, Plaintiff states an Eighth Amendment deliberate-indifference claim against Defendants Brown and Woodard for calling Plaintiff a "chomo" in front of other prisoners, and against Defendant Brown for allegedly offering money to prisoners to assault Plaintiff.  Plaintiff also states an excessive-force claim against Defendant Woodard for squeezing Plaintiff's testicles while conducting a pat-down search.

5

### B. Chaplain Unknown Party

Plaintiff does not state a claim against the unidentified chaplain at URF, who did not respond to Plaintiff's request to change his religious label from Protestant to Mennonite. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff fails to allege any effect on his ability to practice his religion due to the MDOC's religious label. He does not allege any manner in which his religious beliefs or practices are impacted. Thus, he does not state a First Amendment claim, or any other claim, against Defendant Unknown Party.

### C. Grievance Coordinator McLean

Plaintiff also does not state a claim against Defendant McLean, who put Plaintiff on modified access to the grievance process and allegedly failed to heed or grant some of Plaintiff's requests to file grievances. Defendant's actions potentially implicate several of Plaintiff's constitutional rights, but Plaintiff's allegations are not sufficient to state a claim under any of them.

First, Plaintiff does not state a due process claim because he has no due process right to file a prison grievance. Courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure, or to unfettered access to

that procedure. *See Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures."); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf,* No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant's conduct did not deprive him of due process. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) ("Without a protected liberty or property interest, there can be no federal procedural due process claim.").

Plaintiff asserts that McLean put Plaintiff on modified access to the grievance process in retaliation for the fact that Plaintiff filed grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

Plaintiff does not state a retaliation claim against McLean because placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005), *overruled on other grounds by Maben v. Thalen*, 887 F.3d 252, 262 (6th Cir. 2018); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005).

Furthermore, Plaintiff's inability to file grievances could not have denied him his right of access to the courts to petition for redress of his grievances. The exhaustion requirement for bringing a civil rights action only mandates exhaustion of "available" administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).

Even if McLean did not follow prison policy, that failure does not necessarily give rise to a claim under § 1983. *See Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007) ("[A] finding that [state] policies were violated would not support a claim under § 1983."); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).

Finally, for the reasons stated above with respect to Defendant Unknown Party, Plaintiff does not state a claim against McLean with regard to McLean's failure to respond to Plaintiff's kites regarding Plaintiff's religious affiliation.

8

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants McLean and Unknown Party will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's claims against Defendants Brown, Woodard, and Clark remain in the case.

An order consistent with this opinion will be entered.


Dated:   October 1, 2019                        /s/ Paul L. Maloney
                                                          Paul L. Maloney
                                                          United States District Judge